In the Interest of Dante BRADFORD,
a Minor, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 20, 1997.
Filed Dec. 22, 1997.

Kevin G. Sasinoski, Pittsburgh, for appellant.

Claire C. Capristo, Asst. Dist. Atty., Pittsburgh, for the Com.

Before CIRILLO, President Judge Emeritus, and TAMILIA and MONTEMURO*, JJ.

TAMILIA, Judge:

Appellant Dante Bradford appeals from the January 16, 1997 Order of court placing him in a juvenile treatment program at Pressley Ridge Wilderness Camps with review scheduled for July 1, 1997.[1] The trial court adjudged appellant delinquent, finding he committed criminal conspiracy[2] by violating the section of the Uniform Firearms Act prohibiting carrying a firearm without a license.[3]

On appeal, appellant claims the trial court erred in denying his December 19, 1996 petition to withdraw his admission of delinquency. For a summary of the facts and procedural history we look to the May 8, 1997 Opinion of the trial court.

This matter was before the [trial] Court for disposition of a petition filed on December 5, 1996. The petition alleged that

---

* Retired Justice assigned to the Superior Court.

1. The record is devoid of information regarding the outcome of any scheduled review.

2. 18 Pa.C.S. § 903.

3. *Id.,* § 6106.

Defendant [age 12] had violated two counts of the Uniform Firearms Act:

1. Count One—Criminal conspiracy, and
2. Count Two—Possession of a weapon on school property.

At the petition hearing held on December 12, 1996, Defendant entered an admission of guilt to Count One and a denial to Count Two. Defendant's admission was accepted as to Count One. The charges set forth under Count Two were not adjudicated. Disposition under Count One was deferred to January 6, 1997 with permission to place Defendant at George Junior Academy, Pressley Ridge Wilderness Camp, Harbor Creek or Mel Blount Home. On December 19, 1996, Defendant filed a petition to withdraw his admission of delinquency which was denied. Defendant was placed at Pressley Ridge Wilderness Camp on January 9, 1997 with a review scheduled for July 1, 1997.

Despite Defendant's young age, the instant matter was Defendant's fourth appearance before the Court in 1996 wherein he had been charged with having committed delinquent acts. The four appearances were made on February 26, 1996, May 16, 1996 and October 7, 1996 and December 12, 1996.

(Slip Op., Craig, J., 5/8/97, pp. 1–2.)

■ Appellant argues he was not informed of the elements of the offenses with which he had been charged and therefore entered his plea without the requisite knowledge and understanding. The trial court responds to this claim by stating:

There is no issue concerning Defendant's possession of the weapon on the day that it was found in school, as Defendant admitted that he had possession of the weapon on that day. Tr.4. Defendant's admission is also supported by co-Defendant's admission that he was in possession of the gun at school, because he had taken back the gun from Defendant at school for the purpose of returning it to his grandmother. Tr.5. At the petition hearing held on December 12, 1997, Defendant appearred [sic] to have voluntarily, knowingly and intelligently rendered his admission. It was several days after Defendant's mother became upset on the record upon hearing that the disposition guidelines would not permit Defendant to remain in his current treatment program (Tr. 14–16) Defendant petitioned the Court to withdraw his admission pursuant to the Pennsylvania Rules of Criminal Procedure.

(Slip Op. at 4.)

The appellant must fail in his request for reversal of the adjudication of delinquency and disposition by the trial court for two reasons. First, the appellant, as stated in his brief, recognizes that the Pennsylvania Rules of Criminal Procedure do not apply to juvenile proceedings and, therefore, a bare recital of the rights of criminal defendants in opposition to denial of right to withdraw a guilty plea does not suffice. *See* Pa.R.Crim.P. 1,[4] 319(a)[5] and 320.[6] Concerning juveniles, the constitutional rights guaranteed to them, *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), are measured responses which accord due process to the juvenile in accordance to what process is due. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In *Matthews*, the Supreme Court applied a balancing test in reviewing due process when a fundamental interest is at stake, requiring the Court to weigh (a) the private interest affected by the proceeding, (b) the risk of error inherent in the government's chosen procedure, against (c) the interest of the government in using its own procedure. The appellant alleges that the only available standard to apply in hearing a petition for withdrawal of a delinquent plea is that of the

---

4. Rule 1, **Scope of Rules**, provides: "a) Unless otherwise specifically provided, these rules shall not apply to juvenile or domestic relations proceedings."

5. Rule 319, **Pleas and Plea Agreements**, does not apply to juvenile cases as nowhere in the rule is there a provision specifying its application to juvenile proceedings.

6. Rule 320, **Withdrawal of Plea of Guilty.**

criminal procedure. Patently, this is untenable as the procedures leading to a finding of delinquency, both in hearing and adjudication, are so radically different from those of the criminal procedures that the entry of a plea (admission) in either case is totally unrelated to the other. Therefore, the standard in withdrawal of a plea, based upon failure to comply with the procedure required in a criminal case, is clearly irrational and unsupportable.

To illustrate the lack of relevance of the plea procedure in criminal cases to a juvenile proceeding, one only needs to look to Comments under Pa.R.C.P. 319:

### Comment

. . .

At a minimum the judge should ask questions to elicit the following information:

(1) Does the defendant understand the nature of the charges to which he or she is pleading guilty?

[It may not be presumed that even after explanation of the charges that the juvenile understands them without the guidance of an interest adult, parent or attorney.]

(2) Is there a factual basis for the plea?

[This is an element which is universal to all charges and must be established as a prerequisite to adjudication.]

(3) Does the defendant understand that he or she has the right to trial by jury?

[Pursuant to *McKeiver v. Pennsylvania, supra,* the United States Supreme Court has held that a juvenile is not entitled to a jury trial.]

(4) Does the defendant understand that he or she is presumed innocent until found guilty?

[This again is one of the fundamental rights also available to juveniles and the juvenile procedures, even though informal, protect this right in the course of hearing and adjudication.]

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

[The sentencing code which establishes these limits is not applicable to juveniles who are neither sentenced within those ranges nor serve in the facilities provided by the criminal code.]

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

[This provision is inapplicable because the juvenile act does not provide for plea agreements. It does provide for a consent decree, 42 Pa.C.S. § 6340, in which all parties (child, district attorney, probation officer and court) must agree which continues the child under supervision without hearing on the petition. Only if the child objects to the consent decree will a hearing be held to determine its appropriateness. Satisfactory completion of the period of supervision results in discharge of the petition.]

Pa.R.Crim.P. 319 **Comment**. As reviewed above, it is not possible to adjust the rights and procedures of a juvenile proceeding to the requirements of a plea procedure.

Under *Mathews,* the Juvenile Act, which is primarily procedural in nature, establishes the requisite due process procedures to provide the constitutional safeguards necessary for a minor, without implication of nonapplicable criminal rules and procedures. The appellant in this case is 12 years of age and throughout the proceedings had counsel and was accompanied by his mother. Although the Commonwealth alleges appellant failed to supply this Court with the trial record, following the completion of the briefing schedule we did receive an original transcript of the December 12, 1996 hearing, and since appellant is represented by the public defender and pursuing this appeal *in forma pauperis,* we can excuse the failure to file a reproduced record. With the record and analysis of the proceeding provided by the trial judge, we are able to evaluate the validity of the admissions by appellant.

In addition to the facts cited above, the trial court presented the following amplification of appellant's prior record:

On February 26, 1996, Defendant was charged with aggravated assault, criminal conspiracy, recklessly endangering another person and firing a pellet gun. Defendant

was adjudicated delinquent of criminal conspiracy, placed on informal probation for 100 hours of community service and ordered not to go near the victim's home.

On May 16, 1996, Defendant was charged with aggravated assault, criminal conspiracy and recklessly endangering another person. There was also an attachment issued for violation of home detention. Defendant was found guilty of simple assault and ordered to remain on probation with an 8 p.m. curfew and to have no contact with the victim or the victim's family. All other charges were dismissed.

On October 7, 1996, Defendant was charged with the delinquent acts of defiant trespass, terroristic threats and institutional vandalism and was found guilty of all charges. Defendant was committed to The Academy with a review scheduled for April 7, 1997. Before the April review, Defendant was before the Court on his fourth 1996 delinquency petition.

(Slip Op. at 2.)

At the December 12, 1996 petition hearing, appellant's fourth juvenile proceeding in 1996, defendant appeared to have voluntarily, knowingly and intelligently rendered his admission (plea). Pursuant to the Juvenile Act and case law, a child involved in a proceeding in which fundamental rights are implicated must either be represented by counsel or, an interested adult, present in court, must affirmatively waive counsel to assure that his interests are protected as there is a limited presumption of incompetence. See 42 Pa. C.S. § 6337, **Right to Counsel,** and § 6338, **Other basic rights.**[7]

■ The Juvenile Act at section 6310, **Parental participation,** goes so far as to permit the court to compel the parents to be present at hearings and to participate in treatment, while not going so far as to create a right of a child to have his parent, guardian or custodian present at a hearing or participate in a court-ordered program. Obviously, the legislature intended in the strongest fashion to implicate the parent or guardian of the child in the proceedings and treatment of the child, while preventing the possibility that the court could not move forward in that process by refusal or unavailability of a parent or guardian. Under these principles, to say that a 12-year old child, who in the presence of a parent and his attorney, with their assent, now may be heard to say that his admission was unknowingly made as lacking in understanding is unsupportable. Such a determination would undermine and nullify the efficacy of the process adopted with approval by the Supreme Court for the informal but effective protection of a child in juvenile court proceedings. It is sufficient to provide the child and his counsel with a copy

---

7. The rule is somewhat different when it applies to police interrogation of a juvenile and the consequent use of his statement as evidence against him when the *Miranda* rule is implicated. After a series of Pennsylvania Supreme Court decisions, *Commonwealth v. Roane,* 459 Pa. 389, 329 A.2d 286 (1974); *Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975); and *Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975), the Supreme Court in *McCutchen* adopted a per se rule known as the "interested adult" rule. This rule provided that no person under the age of eighteen could waive his right to remain silent and his right to the assistance of counsel without being provided an opportunity to consult with an interested adult who is informed of the juvenile's rights and is interested in the welfare of the juvenile. Prior to the "McCutchen rule", the standard for determining whether a juvenile knowingly waived rights and made a voluntary confession was a traditional totality of circumstances analysis. However, in *Commonwealth v. Williams,* 504 Pa. 511, 475 A.2d 1283 (1984), the Supreme Court stated:

We now reject the application of a rebuttable presumption [announced in *Commonwealth v. Christmas,* 502 Pa. 218, 465 A.2d 989 (1983), which relaxed the per se rule by establishing a rebuttable presumption that confession absent counsel and/or an interested adult is inadmissible] that a juvenile is incompetent to waive his constitutional rights without first having an opportunity to consult with an interested and informed adult. The presumption adopted in *Christmas* serves no useful analytical purposes....

The requirements of due process are satisfied, and the protection against the use of involuntary confessions which law and reason demand is met by application of the totality of circumstances analysis to all questions involving the waiver of rights and the voluntariness of confessions made by juveniles. Among those [attending] factors are the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult. *Id.* at 519–522, 475 A.2d at 1287–1288.

of the charges against him, which must constitute a crime, if committed by an adult and thereafter, during the hearing the evidence produced must establish guilt beyond a reasonable doubt. The record of the petition hearing on December 12th, in addition to the admission by appellant, also provided testimony by the accomplice and that of the school police establishing the charges. The admission did not qualify as a guilty plea but a sworn admission as to the facts of the case in an evidentiary hearing, part admitted and part denied, which established beyond a reasonable doubt appellant's delinquency. A subsequent withdrawal of the admission is irrelevant to the adjudication of delinquency as due process was supplied throughout the hearing and recital of the elements constituting the offense or possible disposition which would follow the adjudication are not relevant to that proceeding. The hearing did provide sufficient evidence through the testimony of the witnesses (Officer Brian Bullard, Pittsburgh School Police, who testified he took the gun from Dante in school, and Dean Abraham of the Reizenstein School who was present at the time) to satisfy the requirement that the charges contained in the petition be proven beyond a reasonable doubt. *In re Gault, supra.* 42 Pa.C.S. § 6341, **Adjudication.** Here, there is no claim of insufficiency of evidence and based on all the evidence presented and all the inferences which could be drawn from that evidence, the charges would have been established without the appellant's admission. *In re D.D.,* 409 Pa.Super. 35, 597 A.2d 648 (1991). Finally, in compliance with section 6338(b), **Self-incrimination,** there was corroborative evidence to the admission so that the admission alone did not establish the charge and was constitutionally sound. This conforms to the requirement in criminal proceedings that the *corpus delecti* must be established before an admission is binding to support a conviction.

Following the adjudication, as permitted, the court moved to a dispositional hearing in which she discussed dispositional alternatives with the probation officer, school official, community outreach representative, the mother and the child's attorney. The hearing was continued to determine which disposition would be most viable. It was several days later, when the only available and appropriate disposition was selected, that Dante's mother became upset on the record at the continued dispositional hearing upon learning that the disposition guidelines used by Juvenile Court would not permit Dante to remain in his current treatment program in the community, that counsel petitioned the court to withdraw Dante's admission pursuant to the Pennsylvania Rules of Criminal Procedure. In addition, there is no provision in the Juvenile Act which mandates rehearing as a matter of right, *Commonwealth v. Croft,* 445 Pa. 579, 285 A.2d 118 (1971), and post-trial motions do not apply in juvenile proceedings. *Commonwealth v. Clay,* 376 Pa.Super. 425, 546 A.2d 101 (1988). The court may, of its own volition, grant a further hearing if the child/parent disagrees with placement. *In re Love,* 435 Pa.Super. 555, 646 A.2d 1233 (1994), *appeal denied,* 540 Pa. 579, 655 A.2d 511, *cert.denied,* 515 U.S. 1126, 115 S.Ct. 2286, 132 L.Ed.2d 288 (1995). The trial court reviewed her reasoning for the need to place Dante in a residential treatment program, rather than retaining him in the community. Despite the cogent reasons for the disposition, Dante's mother refused to accept the need and asserted his innocence of any wrong.

The court properly determined that the process and procedure relied upon by appellant from the criminal rules and guidelines are inapplicable and based upon the procedures detailed in the Juvenile Act and lack of any rules or procedures for withdrawal of an admission or guilty plea, the standard to be applied was the best interest of the child. No cases cited by appellant (all concerning adult criminal procedures) are applicable here.

Upon a thorough review and analysis of the record, we conclude there is no basis for vacating the Order of disposition and that appellant has no right to withdraw what is designated improperly as his guilty plea.

Order affirmed.