J-S03004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| CAROLYN FREEMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER EMERY | : | |
| | : | |
| Appellant | : | No. 974 WDA 2021 |

Appeal from the Order Dated July 21, 2021
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD-21-001180

BEFORE:   LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED: APRIL 11, 2022**

Christopher Emery ("Emery") appeals the final protection from abuse (PFA) order entered against him on July 21, 2021 in the Court of Common Pleas of Allegheny County.   After our review, we affirm.

Carolyn Freeman ("Freeman") and Emery were in a relationship from November 2020 until May 2021.  During the period that Freeman and Emery were together, Emery was separated from his wife, Aracelis Perez Emery ("Perez").  The July 8, 2021 incident occurred at Mellon's Pub in McKeesport, Pennsylvania, after Emery and Freeman's relationship had ended and Emery had resumed his relationship with Perez.  Freeman testified that she went to Mellon's Pub after work, where she normally goes, because it is close to her house.  N.T. PFA Hearing, 7/21/21, at 5.  When Freeman entered the pub, a

_____

[*] Retired Senior Judge assigned to the Superior Court.

woman, subsequently identified as Perez, grabbed her arm. *Id.* Freeman and Perez began discussing Freeman's relationship with Emery, after which Perez hit Emery. *Id.* at 6. After this conversation, Freeman testified that the following occurred:

> [Emery] got up off the bar stool and said [to Perez], you're going to listen to that bitch [i.e. Freeman]. And then [Emery] proceeded to attack [Freeman]. They were holding him back. Some people in the bar. . . . [Perez] grabbed him and another guy grabbed him from the front. And another gentleman from behind. [Perez] was holding his legs.

*Id.* Regarding this same altercation, Emery testified that, "After [Perez] hit me, I kind of snapped and I started hollering at [Freeman]." *Id.* at 21.

At the PFA hearing, Freeman entered into evidence a 21-second video that Freeman recorded on her phone showing Emery extremely angry and yelling at her in the pub. Appellee Freeman's Exhibit 1. The video depicts Emery attempting to lunge past a bouncer towards Freeman. At 18 seconds into the video, Emery shouted, "I'll shoot that mother fuckin' . . . ." Perez can be seen with her arms around Emery's legs, holding him back. Perez testified that she had to stop Emery from attacking Freeman:

> DISTRICT ATTORNEY: Were you trying to stop him from attacking the plaintiff?
>
> PEREZ: To defend himself and his family. I was stopping him.

*Id.* at 36.

Emery presented a 1 minute and 11 second video of an altercation between Freeman and Emery, which occurred on the same evening. Appellant

Emery's Exhibit A. The two appear on opposite sides of the pub parking lot, with Emery reaching into his car to get something. Freeman testified she saw Emery pull out his gun:

> [Emery] went over to his truck. I could not see what he was doing immediately, but then I did see him pull that gun out. And I'm screaming at the top of my lungs because the gentleman that was in front of him now had me around my waist because I'm trying to go to my car to leave. And I'm screaming, he has a gun. Let me go. Let me go. And I am really irritated because I'm scared. People [don't] kill people. Guns do.

*Id.* at 10. Emery testified that he was not looking for his gun, but for his vape pen to help him calm down. *Id.* at 31. Forty-five seconds into the video, Freeman yells, "I'll have my man come up here and blow your house down. . . . I'm gonna have my nigga come up here and blow you down." Appellant Emery, Exhibit 1.

On July 9, 2021, Freeman filed a PFA petition, alleging that Emery assaulted her on July 8, 2021. On July 21, 2021, the court granted Freeman's petition and entered a two-year final PFA order (PFA Order) against Emery. On August 19, 2021, Emery filed both a notice of appeal and a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Emery raises the following issue for our review, "The [c]ourt of [c]ommon pleas erred as a matter of law and abused its discretion when it granted a [f]inal [PFA] order, because there was insufficient evidence to support a finding of abuse as defined by 23 Pa.C.S.A. § 6102.[]" Appellant's Brief, at 7.

- 3 -

When faced with a sufficiency challenge under the PFA Act, this Court reviews the evidence in the light most favorable to the petitioner, grants the petitioner the benefit of all reasonable inferences, determines whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence, and defers to the credibility determinations of the trial court. ***Custer v. Cochran***, 933 A.2d 1050 (Pa. Super. 2007); ***Snyder v. Snyder***, 629 A.2d 977 (Pa. Super. 1993). "The preponderance of the evidence standard is defined as the greater weight of the evidence, i.e., to tip the scale slightly [in one direction.]" ***Ferri v. Ferri***, 854 A.2d 600, 603 (Pa. Super. 2004). Additionally, regarding questions of law, this Court's scope of review is plenary, and the standard of review is *de novo*. ***Commonwealth v. C.L.***, 963 A.2d 489 (Pa. Super. 2008).

Section 6102(a) of the Domestic Relations Code defines abuse, in relevant part, as:

> (a) The occurrence of one or more of the following acts between family or household members, sexual or intimate partners[,] or persons who share biological parenthood:
>
> \* \* \*
>
> (2) placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S.A. § 6102(a)(2).

Emery argues that his conduct did not satisfy section 6102(a)(2) because the there was insufficient evidence to show Freeman's fear was (1) reasonable, or (2) imminent. We disagree.

First, Emery argues that the evidence is insufficient to show Freeman was in reasonable fear of imminent serious bodily injury where Freeman, in fact, provoked Emery. Specifically, Emery argues that, during the July 8, 2021 incident, he only became irate after Freeman spoke to Perez and threatened to have people from Freeman's housing project harm him. Appellant's Brief, at 19. Additionally, Emery argues that Freeman's fear cannot be deemed reasonable because the police, after speaking with people who witnessed the incident, gave Emery his gun back, and, thus determined Emery was not a threat. Appellant's Brief, at 20.

The trial court, however, relied on Freeman's Exhibit 1 to determine that the rage Emery exhibited during the incident warranted the entry of a PFA order. The recording shows Emery lunging at Freeman, while making a threatening comment about "shooting" someone. Appellee Freeman, Exhibit 1; PFA Hearing, *supra* at 7; Appellee's Brief, at 16. Indeed, Emery's reactions were disproportionate to any purported provocation by Freeman, and Freeman's Exhibit 1 is sufficient to show that her fear was reasonable.

Emery also argues that the evidence is insufficient to show Freeman was in reasonable fear of Emery because the only other incident between the parties was when Emery "pulled out his weapon on [Freeman] and his house" while they were still dating. PFA Hearing, *supra* at 13. However, under

- 5 -

section 6102(a)(2), the fear must simply be reasonable. ***Fonner v. Fonner***, 731 A.2d 160 (Pa. Super. 1999). Here, the trial court considered Freeman's testimony to determine that her fear was reasonable during the July 8th incident while Emery was looking for his weapon in his car. ***See*** PFA Hearing, ***supra*** at 10; ***Snyder, supra*** at 514 (this Court defers to trial court regarding determinations of witness credibility).

Additionally, Emery cites no case law for the proposition that evidence is insufficient merely because a petitioner has committed only one other act to provoke fear. Emery's conduct on July 8th is sufficient to establish Freeman's fear as reasonable.

Second, Emery argues that the evidence is insufficient to show fear of imminent serious bodily injury because, "other than a single request that [Freeman] cease contacting [Perez], Emery had nothing to do with Freeman until Freeman showed up at an establishment where Emery already was." Appellant's Brief, at 25. This argument is meritless.

At hearing Emery admitted to following Freeman to the threshold of the bar and that Perez "stormed out the door after [Freeman]." PFA Hearing, ***supra*** at 13. Additionally, Exhibit 1 shows Emery lunging at Freeman, while yelling about "shooting" someone, and while Perez and a bouncer held Emery back. PFA Hearing, ***supra*** at 7. This evidence is sufficient to that Freeman reasonably was in fear of "imminent bodily injury" as required under section 6102(a)(2).

Viewing the evidence in the light most favorable to Freeman as the prevailing party, the evidence presented at the PFA hearing was sufficient to support the trial court's finding that Freeman reasonably feared imminent serious bodily injury as a result of Emery's actions. ***Custer, supra***. Accordingly, we affirm.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/11/2022